Whitaker, Judge,
delivered the opinion of the court:
This is a suit by the City of New York to recover the value of food stamps which had been stolen while in its possession. These stamps were of different kinds designated by two different colors, orange and blue. Both kinds were stolen. The National Surety Corporation paid to the City the value of the orange stamps which had been stolen, but not of the blue stamps; it sues as the subrogee of the City of New York.
The “Food Stamp Plan” was adopted pursuant to the Act of August 24, 1935, as amended (49 Stat. 774; U. S. C. Title 7, sec. 612 (c)). Pursuant thereto the defendant entered into a contract with the City of New York, under the terms of which the City deposited with the Surplus Marketing Administration, hereinafter referred to as the “Administration,” money equivalent to the face value of the orange colored stamps issued to the City by the Administration. At the same time the Administration also issued to the City, gratis, blue stamps in an amount approximately equal to one-half the amount of orange stamps issued. The City of New York then issued these books containing orange and blue stamps in the ratio of two orange to one blue to persons in need of relief.
The orange stamps were good for any article of food. The blue stamps were good for only those articles of food which from time to time were designated by the Administration as surplus commodities. The Government redeemed from *152 tbe food dealer the orange stamps with the money deposited with it by the City, and it redeemed the blue stamps with money appropriated by the Congress for this purpose.
While the plan was in force the City received from the Administration a total amount of $63,216,500 worth of orange stamps, and $30,991,750 of blue stamps. While some of these stamps were in the City’s possession three of its offices were burglarized and a total of $12,138 worth of orange stamps and $21,069 worth of blue stamps were stolen.
At the termination of the agreement between the Administration and the City, the City had in its possession $174,290 worth of orange stamps, and $76,569 worth of blue stamps.[1] It presented the orange stamps to the Administration for redemption. The Administration redeemed all the orange stamps presented, except $21,069 thereof, which was the value of the blue stamps which had been stolen while in the possession of the City. The City sues to recover both the value of the blue stamps and the orange stamps which were stolen while in its possession.
The City insists that the rights of the parties are to be determined by the law of bailments and, it having been found that the stamps were lost through no fraud or negligence of the City, that the loss must fall on the owner of the stamps, and it insists that the owner of both the orange and the blue ones was the defendant. We think, however, that the liability of the parties is to be determined by the contract they entered into.
This contract in article III provides:
The Administration shall furnish to the City such orange colored and blue surplus stamps as may be required to carry out the terms and conditions of this agreement. The City shall deposit, or cause to be deposited, without recourse, with the Administration a sum of money equal to the face value of the orange colored stamps to be obtained, which money shall become Administration funds to be used by the Administration in such manner as it shall deem necessary and proper to pay claims upon stamps. No deposit shall be required of the City at any time for blue surplus stamps, but the *153 City shall be legally responsible to the Administration at all times for blue surplus stamps in its possession.
Article YII provides for the redemption of the orange colored stamps in possession of the City at the termination of the agreement. It reads:
The Administration shall redeem, at face value, from the City all orange colored stamps remaining in the possession of the City at the termination of this agreement, provided, however, that the City shall return to the Administration, in the same ratio as received, all unissued blue surplus stamps obtained from the Administration.
The right of the City to recover for the orange colored stamps is determined by the defendant’s agreement to redeem, as contained in article VII. This promise was to redeem “all orange colored stamps remaining in the possession of the City at the termination of this agreement.” It did not agree to redeem stamps that had been in the possession of the City, but had been stolen from it, whether with or without the City’s negligence. It agreed to redeem such stamps as might be presented to it for redemption. 'Otherwise stated, its agreement to redeem was conditioned upon presentation of the stamps. A refusal to redeem without presentation is not a breach of defendant’s contract, whether or not plaintiff’s failure to present the stamps for redemption was due to an event for which it was in no way responsible.
It is said in WilUston on Contracts:
As a general rule, conditions which are either expressed or implied in fact must be exactly fulfilled or no liability can arise on the promise which such conditions qualify. The reason for this is obvious. The promisor can only be held liable according to the terms of the promise which he makes. * * * The condition is part of his promise qualifying and limiting it, and his promise, as matter of plain fact, is not broken until the condition has happened or has been performed [§ 675, p. 1940].
* * * * *
Where, therefore, A promises B to do something if .a certain contingency happens or if B renders some *154 performance, there is no breach of promise, and logically, therefore, no liability unless that contingency happens or that performance is rendered, even though this result is due to no fault of the promisee and could not have been prevented by him * * * [§ 808, p. 2269].
Hi H* H* H* H*
As the basis of the defendant’s excuse where the plaintiff has failed to perform, or is obviously going to fail to perform, is failure of consideration, the reason why the plaintiff fails to perform is immaterial. Even though his failure is caused by excusable impossibility, the result is the same. The defendant has not got what he bargained for and need not perform * * * [§ 838, pp. 2346, 2347].
The defendant further undertakes to justify its refusal to redeem the stamps that were stolen by the assertion that the Administration was under no obligation to redeem any of the orange stamps until all of the unissued blue stamps-were turned in. We, however, do not so read article VII. Under this article the Administration agrees to redeem the orange colored stamps provided the City shall return all unissued blue surplus stamps “in the same ratio as received.” The defendant’s argument disregards this expression. We think the use of this phrase shows that the agreement to redeem was conditioned upon turning in blue stamps in the same ratio to the orange colored stamps turned in as that in which they had been received by it. In other words, if there had been issued to the City two orange colored stamps' for every blue stamp, then when the City sought to redeem the orange colored stamps it had to turn in one blue stamp for two orange stamps.
The purpose of the provision seems to have been to require the City in issuing the stamps to persons on relief to issue them in the proportion of two orange for one blue. It was intended to prevent the holding back of orange stamps.
It was assumed, of course, that the City would turn in for redemption all its unissued orange stamps and, hence, it was made a condition of their redemption that all unissued blue stamps be turned in, in the same ratio to the. *155 orange stamps as the ratio in which they had been received by -the City. We do not think it was intended to make redemption conditioned upon turning back every unisssued blue stamp, whatever may have been the reason for not doing so. If it had been intended to make of the City an insurer of the safety of the blue stamps words much more apt to express such a purpose could have been found than those used.
But, since the Administration’s agreement to redeem was limited to such stamps as were presented for redemption, we are of opinion that the City is not entitled to recover the value of the orange colored stamps which were stolen.
Whether or not the defendant was justified in deducting the value of the blue stamps which were stolen is a more difficult question. The answer to it depends upon the proper construction of the last sentence of article III of the contract, which reads:
* * * No deposit shall be required of the City at anytime for blue surplus stamps, but the City shall be legally responsible to the Administration at all times for blue surplus stamps in its possession.
The plaintiff very properly says thjajfc the expression “legally responsible” means responsible according to law. According to what law ? The plaintiff says according to the law of bailments. This we think is correct, unless the contract between the parties enlarges or restricts this responsibility.
There is no provision of the contract that defines the City’s responsibility for the safekeeping of the stamps. The only provisions of the contract that may be thought to have any bearing thereon are articles V and XII. The first sentence of article V reads: “The City shall act in lieu of the Administration in conformity to sections 200, 201, 202, 203 and 205 of the regulations and conditions and shall act as, or shall designate, a bonded issuing officer for such purpose.” The proof does not show whether or not the City designated a bonded issuing officer nor the terms of the City’s bond, if it acted as issuing officer. In the absence of proof of the' conditions' of such a bond — if one was given — it cannot be assumed that the City bound itself as *156 ■an insurer. Standing alone this sentence indicates no more than that the City agreed that it would well and truly discharge its duties as issuing officer, that is to say, that it would issue the stamps only in the way provided for in the sections of the regulations named. All of the regulations mentioned have to do with the issuance of the stamps; none of them have any reference to the safekeeping of them, nor to the City’s responsibility if they were lost, destroyed, or stolen.
This article does not enlarge the City’s liability for the safekeeping of the stamps. Nor does article XII, which •reads:
Personnel and, Administrative Expenses. — The City shall provide such bonded and other personnel as the Administration, the State and the City may mutually deem necessary, and the City shall assume and be responsible for all administrative expense in connection with the issuance of food order stamps in accordance with the terms of this agreement.
On the contrary, this article would indicate that it was to be the individual that was to be bonded, and not the City. The City’s liability, except for the proper issuance of the stamps, was not, apparently, to be enlarged, by a "bond or otherwise, beyond that of the ordinary bailee. At any rate, we can find no article of the contract that does enlarge it.
If the liability of the City for the loss of these stamps is to be determined according to the law of bailments, it is quite clear that the City is not responsible for their loss in the absence of negligence or fraud, since this is a bailment for the benefit of both parties. Wylie v. Northampton Bank, 119 U. S. 361. We have found that there was neither negligence nor fraud.
The defendant says that the cases of United States v. Prescott, 3 Howard, 578; United States v. Dashiel, 4 Wallace, 182; Boyden v. United States, 13 Wallace, 17; and Smythe v. United States, 188 U. S. 156, define the City’s responsibility. All of these cases relied on by defendant, and several others, are discussed by the Supreme Court in 'the Smythe case. After having done so, the Court said:
*157 * * * The general rule announced in those cases— and the question need not be discussed anew — is that the obligations of a public officer, who received public moneys under a bond conditioned that he would discharge his duties according to law, and safely keep such moneys as came to his hands, by virtue of his office, are not to be determined by the principles of the law of bailment, but by the special contract evidenced by. his bond conditioned as above stated; consequently,, it is no defense to a suit brought by the Government upon such a bond that the moneys, which were in the custody of the officer, had been destroyed by fire occurring without his fault or negligence. * * *
A reading of all of these cases shows that the custodian of public moneys was held to an accountability stricter than that of the ordinary bailee only because of the provisions of their bonds, which were held to impose upon the obligor the absolute obligation, without condition, to turn over the public moneys upon demand, and that a failure to do so, from whatever cause, was a breach of the obligation of the bond. It is clear from a reading of them that this, is so only because the provisions of the bonds placed them, under a stricter accountability than the ordinary bailee.. In the absence of a bond, or in the absence of some statutory provision, the custodian’s obligation is only that of a bailee.
Defendant is, therefore, in error in saying that these cases-define the City’s responsibility, since no bond was given and there is no provision in the contract which defines the City’s obligation to keep safely the stamps entrusted to it.
Moreover, the same reasons of public policy for holding: individual custodians of public moneys to a strict accountability do not exist in the case before us. In all of the cases upon which defendant relies the custodians were all employees of the defendant engaged in the defendant’s business.. The reason for holding them to this strict accountability is stated in the Prescott case as follows:
* * * Public policy requires that every depositary of the public money should be held to a strict accountability. Not only that he should exercise the highest degree of vigilance, but that “he should keep safely”" the moneys which come to his hands. Any relaxation *158 of this condition would open the door to frauds, which might be practiced with impunity. A depositary would have nothing more to do than to lay his plans and arrange his proofs, so as to establish his loss, without laches on his part. Let such a principle be applied to our postmasters, collectors of the customs, receivers of public moneys, and others who receive more or less of the public funds, and what losses might not be anticipated by the public? No stich principle has been recognized or admitted as a legal defense. * * *
This rule hardly applies to a municipality engaged with the defendant in the joint enterprise of relieving human suffering. There is equal reason for applying this rule of strict accountability to the individuals employed by the City of New York to distribute these stamps, but not as against the City itself, engaged as it is in this common undertaking with the defendant.
Indeed, we think the City’s relationship to the defendant is more nearly akin to that of a partner or joint adventurer than it is to an employee in charge of the public funds. It put up a part of the money for the common enterprise, and the defendant put up a part. It carried out a certain part of the plan, and the defendant, a certain part. They were indeed joint adventurers, or partners in this enterprise, and should be held liable to one another as such. No one ever thought of undertaking to. hold a partner or joint adventurer •to that strict accountability for the assets of the enterprise entrusted to him as that which was applied in the cases cited to a custodian of public funds. Certainly this should not be done unless the contract between the parties demands it.
Since the stamps were stolen through no fault of the City’s, we think the defendant was without authority to deduct their value from the amount it owed the City for the orange stamps.
We think the result arrived at is not only that required by the law, but it is also equitable and just. The loss of both the orange colored and the blue surplus stamps was without fault on the part of either the Administration or of the City. It seems to us fair and just that these people, engaged in this common enterprise, should each stand its own loss: *159 that is to say, the City should stand the loss arising from the theft of the orange-colored stamps, the money for which it put up, and the Administration should stand the loss of the blue stamps, the money for the redemption of which it put up.
Plaintiff National Surety Corporation, which paid the City for the orange-colored stamps which were stolen, is not entitled to recover, and the petition as to it is dismissed.
The amount deducted for the value of the blue stamps which were stolen was $21,069.00. Judgment for this amount will be entered in favor of the City against the defendant. It is so ordered.
Jones, Judge; and Littleton, Judge, concur.
Whaley, Chief Justice, concurs in the result.
Madden, Judge, took no part in the decision of this case.

 It is agreed that this is in the same ratio as received. The parties agreed upon a modification of the ratio of two for one.